UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AGAPITO ACOSTA,

                          Petitioner,

          -against-

PAUL ARTETA, in his official capacity as Sheriff
of Orange County, New York and Warden of the
Orange County Correctional Facility, et al.,

                          Respondents.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  2/2/2026

1:25-cv-9916 (MKV)

OPINION AND ORDER DENYING
PETITION FOR HABEAS CORPUS

MARY KAY VYSKOCIL, United States District Judge:

Petitioner Agapito Acosta is an El Salvadorean who illegally sneaked into the United States at some unknown time and place [ECF No. 9 ("Carey Decl.") ¶ 3]. There is no dispute that Petitioner has been present in the United States for more than thirty years, because, during that time period, he has been convicted of several crimes and violations [ECF No. 1 ("Pet.") ¶ 30 & n.3; *see* ECF No. 10-4]. He also suffered a stroke and has "cognitive impairments." Pet. ¶¶ 18, 22. On June 11, 2025, U.S. Immigration and Customs Enforcement ("ICE") determined that Petitioner should be arrested and detained "pending a final administrative determination" [ECF No. 10-2 ("Notice of Custody Determination"); *see* ECF Nos. 10-2 ("Warrant"), 10-5 ("NTA")]. Since his arrest, Petitioner has appeared in Immigration Court for more than ten proceedings, but he has not had a bond hearing. *See* Carey Decl. ¶¶ 11–22; Pet. ¶ 1.

The principal issue in this case is whether a Second Circuit decision which held that the Due Process Clause prohibited the "unreasonably prolonged detention" without a bond hearing of "legal permanent residents" detained "under the authority of 8 U.S.C. § 1226(c)" ("Section 1226(c)") applies to Petitioner. *Black v. Decker*, 103 F.4th 133, 137 (2d Cir. 2024). This precedent does not apply to Petitioner, who is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A)

1

("Section 1225(b)(2)(A)").   Rather, since Petitioner has never been lawfully admitted to this country, he is "treated, for constitutional purposes, as if stopped at the border.  And that ma[kes] all the difference."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (internal quotation marks and citation omitted).  For the reasons set forth below, the Petition is DENIED.

## I.   BACKGROUND[1]

Petitioner is a native and citizen of El Salvador who illegally entered the United States "at an unknown time and an unknown place."  Carey Decl. ¶ 3; *see* Record at 3.  It is clear that Petitioner effected his illegal entry more than thirty years ago since, as Petitioner acknowledges, he "pled guilty to a trespass violation" in 1995.  Pet. ¶ 30 n.3.  Petitioner thereafter was convicted of "attempted assault in the third degree with intent to cause physical injury" and "criminal possession of a weapon in the fourth degree with intent to use."  Pet ¶ 30; *see* Repository Inquiry at 3, 4; Record at 3.  Since those criminal convictions, Petitioner has entered in to "five guilty pleas for violations," including "urinating in a public space," "possessing an open container of alcohol in public," and "failing to present a valid LIRR ticket."  Pet ¶ 30.

Decades ago, in 2001, Petitioner filed an Application for Temporary Protected Status ("TPS") with the United States Citizenship and Immigration Services ("USCIS").  Carey Decl. ¶ 4.  USCIS denied his TPS Application in 2003.  *Id.*  Petitioner, nonetheless, remained in the United States "with no [legal] status."  Record at 3.[2]  According to Petitioner, in May 2025, a "physician

---

[1] The facts are drawn from the parties' submissions, including, among other submissions, the Petition [ECF No. 1 ("Pet.")], the Declaration of Supervisory Detention and Deportation Officer John Carey [ECF No. 9 ("Carey Decl.")], a Form I-200 Warrant for Arrest of Alien [ECF No. 10-1 ("Warrant")], a Form I-286 Notice of Custody Determination [ECF No. 10-2 ("Notice of Custody Determination")], a Form I-213 Record of Deportable/Inadmissible Alien [ECF No. 10-3 ("Record")], a "Repository Inquiry" setting forth Petitioner's criminal history in New York State [ECF No. 10-4 ("Repository Inquiry")], and a Notice to Appear [ECF No. 10-5 ("NTA")].

[2] According to ICE, on June 11, 2025, Petitioner "freely and voluntarily stated that he was a citizen and national of El Salvador with no status in the United States" and "claim[ed] no fear of returning to El Salvador."  Record at 3.

diagnosed [him] as having suffered from a stroke." Pet. ¶ 18.

On June 11, 2025, ICE commenced removal proceedings against Petitioner. Carey Decl. ¶ 11. In particular, ICE arrested him, pursuant to an I-200 Warrant for Arrest of Alien, and, after processing, detained him at the Orange County Jail in Goshen, New York. *See* Carey Decl. ¶ 8; Warrant. On the day of the arrest, June 11, 2025, ICE also issued a Notice To Appear, charging Petitioner with being removable, pursuant to 8 U.S.C. § 1182 (a)(6)(A)(i) of the Immigration and Nationality Act (the "INA"), on the ground that Petitioner is "an alien present in the United States who has not been admitted or paroled." NTA at 1; *see* Record at 3.

ICE also issued a Notice of Custody Determination on June 11, 2025. It states that ICE had "determined that, pending a final administrative determination" in the removal proceedings, Petitioner should be "Detained by the Department of Homeland Security." Notice of Custody Determination. ICE attests that Petitioner "is currently detained at the Orange County Jail pursuant to . . . 8 U.S.C. § 1225(b)(2)(A)." Carey Decl. ¶ 9.

One week later, on June 18, 2025, Petitioner appeared *pro se* for his first master calendar hearing before an Immigration Judge; however, the "case was adjourned for [Petitioner] to consult with an attorney." Carey Decl. ¶ 11. On June 25, Petitioner appeared with counsel for his second master calendar hearing before an Immigration Judge. *Id.* ¶ 12. This time, the "case was adjourned at [Petitioner's] request for his attorney to assess whether there were competency issues and for attorney preparation." *Id.*

On July 7, 2025, Petitioner appeared, with counsel, [3] for his third master calendar hearing before an Immigration Judge. *Id.* ¶ 13. The case was again adjourned at [Petitioner's] request "for his attorney to contact a psychologist to evaluate him." *Id.* On July 14, 2025, Petitioner appeared

---

[3] Petitioner has been represented by counsel at every proceeding since the first master calendar hearing, and, as such, the Court does not hereafter expressly note the presence of counsel at every proceeding.

for his fourth master calendar hearing before an Immigration Judge. *Id.* ¶ 14. The Immigration Judge "sustained" the charge of removability at the July 14, 2024 hearing. *Id.* However, instead of moving to the next phase of the removal proceedings, "at [Petitioner's] request, the case was adjourned to a master hearing on July 21, 2025, to provide his attorney with additional time to contact a psychologist to evaluate him." *Id.* On July 21, 2025, Petitioner appeared for his fifth master calendar hearing, but the "case was again adjourned at [Petitioner's] request for his attorney to contact a psychologist." *Id.* ¶ 15. The same thing happened at his sixth master calendar hearing on August 6, 2025. *Id.* ¶ 16.

On August 20, 2025, Petitioner appeared for his seventh master calendar hearing, but, this time, the case was again adjourned, again at Petitioner's request, for a psychological evaluation to be completed, "which was expected to take place over several weeks." *Id.* ¶ 17. Several weeks later, at his eighth master calendar hearing on September 8, 2025, Petitioner requested and received yet another adjournment, this time "to afford him additional time to conclude [the] psychological evaluation." *Id.* ¶ 18. Substantially the same thing occurred on September 22, 2025, although, at this hearing, "ICE opposed any additional continuances." *Id.* ¶ 19.

"A clinical and forensic neuropsychologist . . . met with Petitioner in August and September 2025, in person, and conducted various tests and neuropsychological evaluations." Pet. ¶ 21. The neuropsychologist diagnosed Petitioner with "Mild Neurocognitive Disorder and Borderline Intellectual Functioning." *Id.* The neuropsychologist concluded that Petitioner "had a low IQ from the start" and "some of his performances in the neurocognitive tests administered to him [were] consistent with expectations for a stroke or brain infarction." Pet., Ex. C. at 15.

Thereafter, on October 28, 2025, the Immigration Judge conducted a competency hearing pursuant to *Matter of M-A-M-*, 25 I. & N. Dec. 474 (BIA 2011) (the "*M-A-M-* Hearing"), which

decision requires immigration judges to "prescribe safeguards" as necessary "to protect the rights and privileges of [an] alien" in removal proceedings insofar as he is not competent to proceed without such safeguards. *Matter of M-A-M-*, 25 I. & N. Dec. at 478; *see Reid v. Bondi*, 132 F.4th 109, 115 (2d Cir. 2024); Pet. ¶¶ 20 & n.1, 24; Carey Decl. ¶ 20. At the *M-A-M-* Hearing, counsel for Petitioner "moved for termination of the removal proceedings or alternative safeguards for the proceedings." Pet. ¶ 24. The Immigration Judge "denied the motion to terminate" but "granted agreed upon safeguards" for Petitioner, including, among other things, allowing Petitioner's counsel to ask leading questions and refresh his recollections, allowing Petitioner to proffer testimony from family and friends, and allowing Petitioner to take breaks and extra time as needed. *Id.*; *see* Carey Decl. ¶ 20.

Shortly thereafter, on November 12, 2025, Petitioner appeared for his tenth master calendar hearing before an Immigration Judge and filed an application for asylum, withholding of removal, and deferral of removal under the Convention Against Torture [ECF No. 14]. Pet. ¶ 27; *see* Carey Decl. ¶ 21. The Immigration Judge scheduled an individual merits hearing, which has begun but has not been completed [ECF Nos. 14, 15]. Pet. ¶ 27; Carey Decl. ¶¶ 21, 22.[4]

On November 26, 2025, Petitioner, through counsel, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in this Court [ECF No. 1 (the "Petition" or "Pet.")]. In the Petition, he asserts, first, that he has been subjected to unreasonably "prolonged" detention without a bond hearing in violation of the Fifth Amendment, citing the Second Circuit's decision in *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024). Pet. ¶¶ 61–63.[5] In particular, Petitioner asserts that he "is

---

[4] The Immigration Judge held an individual merits hearing on January 15, 2026, which is scheduled to continue on February 26, 2026 [ECF Nos. 14, 15].

[5] The Petition misnumbers the sixty-third paragraph of the Petition, and every subsequent paragraph, by starting over at "58" after paragraph 62. To avoid confusion with earlier paragraphs, the Court cites to paragraphs after 62 as if they were numbered correctly, in continuous ascending order.

currently being detained under the mandatory provisions of § 1226(c) due to his past criminal convictions," and, as such, "*Black v. Decker* governs his prolonged detention due process claim." *Id.* ¶¶ 33, 47.  He seeks his "immediate release" or a bond hearing.  *Id.* ¶ 63.  Petitioner also asserts that his detention violates Section 504 of the Rehabilitation Act of 1974 and that his immediate release is the only reasonable accommodation of his disability.  *Id.* ¶¶ 59–67, 71, 72.

Shortly thereafter, Petitioner and the government jointly filed a proposed briefing schedule, which the Court endorsed [ECF Nos. 6, 7].  On December 22, 2025, the government timely filed an opposition brief [ECF No. 8 ("Opp.")], a return attaching a number of exhibits [ECF No. 10], and the Declaration of Supervisory Detention and Deportation Officer John Carey [ECF No. 9 ("Carey Decl.")].  The government argues that, pursuant to 8 U.S.C. § 1225(b)(2)(A), Petitioner is subject to "statutorily mandated" detention "for the duration of his removal proceedings," and, under binding precedent, such detention without a bond hearing "does not violate his due process rights."  Opp. at 9 (citing *Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)).  The government also argues that the Rehabilitation Act "does not create a private right of action that applies here."  *Id.* at 13.

Petitioner filed a reply brief in further support of the Petition on January 5, 2026 [ECF No. 11 ("Reply")].  In his reply, Petitioner argues that his "ongoing detention is unlawful because it has become unconstitutionally prolonged" in violation of the Fifth Amendment irrespective of "whether he is detained under § 1225(b)(2) or § 1226(c)."  Reply at 1.  He also maintains that his Rehabilitation Act claim is a basis for his release.  *Id.* at 9–10.

## II.    DISCUSSION

As noted above, the principal issue in this case is whether Petitioner is detained under Section 1226(c) and might, therefore, be constitutionally entitled to a bond hearing, or is detained

6

under Section 1225(b)(2)(A), which provides for detention without a bond hearing. *See Jennings*, 583 U.S. at 297.   The record before the Court establishes that Petitioner is subject to mandatory detention pending the resolution of his removal proceedings under Section 1225(b)(2)(A). Petitioner is therefore "treated, for constitutional purposes, as if stopped at the border." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).   The Second Circuit's decision in *Black v. Decker*, which involved "two legal permanent residents" who were detained "under the authority of [Section] 1226(c)," does not apply to Petitioner, who illegally entered the country and has never had lawful status. *Black*, 103 F.4th at 137.   In any event, even if the Court were to suppose, *arguendo*, that the Constitution prohibits "unreasonably prolonged detention" of aliens who are detained under Section 1225(b)(2)(A), Petitioner here has not shown that Respondents have subjected him to unreasonably prolonged detention. *Id*. at 138.   Rather, the record demonstrates that Petitioner has repeatedly sought delays in his immigration case only to file this case arguing he has been held too long awaiting the resolution of his removal proceedings.   Petitioner also fails to state a cognizable claim under the Rehabilitation Act.

**A. Petitioner Is Subject to Mandatory Detention under Section 1225(b)(2)(A).**

Several provisions of the INA require detention of certain aliens pending removal from the United States. *See* 8 U.S.C. § 1225(b)(2)(A); 8 U.S.C. § 1226(c); 8 U.S.C. § 1225(b)(1)(A)(i); 8 U.S.C. § 1225(b)(1)(A)(iii); *Chen v. Almodovar*, No. 25-cv-9670 (JPC), 2026 WL 100761, at *4 (S.D.N.Y. Jan. 14, 2026) (summarizing how the different provisions of the INA treat different "categories" of aliens during removal proceedings).   "Petitioner does not dispute here that he is rightfully subject to mandatory detention" under the INA.   Reply at 6; s*ee* Pet. ¶ 33.   However, the parties disagree about which provision of the INA governs this case.

Petitioner contends that he is detained pursuant to Section 1226(c).   As pertinent here,

Section 1226(c) "directs that the government 'shall detain' noncitizens who are charged with removability based on a prior conviction on specified criminal grounds." *Black*, 103 F.4th at 137; *see* 8 U.S.C. § 1226(c).  In *Black*, the Second Circuit held that "the Fifth Amendment's guarantee of due process precludes a noncitizen's unreasonably prolonged detention under section 1226(c) without a bond hearing." *Black*, 103 F.4th at 159.

The government maintains that Petitioner is detained pursuant to Section 1225(b)(2)(A). As this Court and others have explained elsewhere, Section 1225(b)(2)(A) provides for mandatory detention of any alien, such as Petitioner, who illegally entered the United States, has never been lawfully admitted, and, immigration officials have determined, is not entitled to be admitted.[6]  *See Chen*, No. 25-cv-9670 (JPC), 2026 WL 100761, at *13; *Weng v. Genalo et al.*, No. 25-cv-09595 (JHR), 2026 WL 194248, at *3 (S.D.N.Y. Jan. 25, 2026); *Chen v. Almodovar*, No. 25-cv-8350 (MKV), 2025 WL 3484855, at *4–7 (S.D.N.Y. Dec. 4. 2025); *Liang v. Almodovar*, No. 25-cv-09322 (MKV), 2025 WL 3641512, at *3 (S.D.N.Y. Dec. 15, 2025); *Mejia Olalde v. Noem*, No. 25-cv-00168 (JMD), 2025 WL 3131942, at *5 (E.D. Mo. Nov. 10, 2025).  It is "clear" that "mandatory detention [under Section 1225(b)(2)(A)] does not entail a bond hearing." *Chen*, No. 25-cv-9670 (JPC), 2026 WL 100761, at *3 (citing *Jennings*, 583 U.S. at 297).

On the undisputed facts before the Court, Section 1225(b)(2)(A) plainly applies to Petitioner.  Specifically, Section 1225(b)(2)(A) provides that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for

---

[6] The Court is of course aware that many judges disagree with this interpretation of Section 1225(b)(2)(A).  *See Goorakani v. Lyons*, No. 25-cv-9456 (DEH), 2025 WL 3632896, at *12 (S.D.N.Y. Dec. 15, 2025) (stressing how many district courts have ruled differently).  However, the Court remains persuaded that the plain text of the INA provides for mandatory detention pursuant to Section 1225(b)(2)(A) of an alien who "entered the country illegally, no matter how long ago," *id* at *9, has never been lawfully admitted, and has been determined by immigration officials not to be entitled to be admitted.  Petitioner has not raised any arguments that undermine the reasoning that this Court laid out in *Chen* and *Liang* and that other judges have elaborated on in the cases cited above.

a [removal] proceeding." 8 U.S.C. § 1225(b)(2)(A).  The INA defines an "applicant for admission" to include any "alien *present* in the United States *who has not been admitted*."  8 U.S.C. § 1225(a) (emphasis added).  "The terms 'admission' and 'admitted' mean, with respect to an alien, the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A) (emphasis added).

Petitioner is an El Salvadoran who illegally sneaked into the United States "at an unknown time and an unknown place."  Carey Decl. ¶ 3; *see* Record at 3.  Since his illegal entry, Petitioner has remained present in the United States "with no [legal] status."  Record at 3.  Thus, Petitioner is an "alien present in the United States who has not been [lawfully] admitted," and, therefore, Petitioner is "an applicant for admission" within the meaning of Section 1225(b)(2)(A).  8 U.S.C. § 1225(a); 8 U.S.C. § 1225(b)(2)(A).

Moreover, immigration officials have determined that Petitioner is not entitled to be admitted.  In particular, ICE issued a Notice To Appear ("NTA") charging Petitioner with being inadmissible and removable.  NTA at 1 (citing 8 U.S.C. § 1182(a)(6)(A)(i)); *see* Record at 3; Carey Decl. ¶ 10.  Thereafter, "[t]he allegations and the charge in the NTA were sustained" by the Immigration Judge.  Carey Decl. ¶ 14.  Thus, as an applicant for admission whom immigration officials have determined "is not clearly and beyond a doubt entitled to be admitted," Petitioner is subject to mandatory detention during his removal proceedings under the plain text of Section 1225(b)(2)(A).  8 U.S.C. § 1225(b)(2)(A).  As the Supreme Court has pointed out, Section 1225(b)(2)(A) does not "say[] anything whatsoever about bond hearings." *Jennings*, 583 U.S. at 297.  Furthermore, *Black* does not say anything whatsoever about aliens detained pursuant to Section 1225(b)(2)(A). *See Black*, 103 F.4th at 159.

Thus, Petitioner clearly is subject to mandatory Section 1225(b)(2)(A) and, therefore, has

no right to a bond hearing. *See Chen*, No. 25-cv-9670 (JPC), 2026 WL 100761, at *7; *Weng*, No. 25-cv-09595 (JHR), 2026 WL 194248, at *3; *Chen*, No. 25-cv-8350 (MKV), 2025 WL 3484855, at *4–7; *Liang*, No. 25-cv-09322 (MKV), 2025 WL 3641512, at *3. Petitioner does not offer any new arguments that Section 1225(b)(2)(A) does not apply to him. Rather, he simply "disagrees" with the Court's interpretation of the statute and cites the many district court opinions concluding that Section 1225(b)(2)(A) does not apply to an alien who, like Petitioner, successfully sneaked across the border into the interior of the country. Reply at 7–8 & n.2; *see* Pet. ¶ 33 n.4. The Court remains convinced that an alien who illegally enters the country, and never thereafter gains lawful status, is treated by our laws as if stopped at the border. *See Liang*, No. 25-cv-09322 (MKV), 2025 WL 3641512, at *5 (explaining the well-established "entry fiction"); *see United States ex rel. Kordic v. Esperdy*, 386 F.2d 232, 235 (2d Cir. 1967); *Mendez Ramirez v. Decker*, 612 F. Supp. 3d 200, 219 (S.D.N.Y. 2020). For such an alien, "due process is whatever procedure has been 'authorized by Congress.'" *Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 648 (S.D.N.Y. 2018) (quoting *Mezei*, 345 U.S. at 221). Thus, because Section 1225(b)(2)(A) does not authorize a bond hearing, due process does not require one. *Id.*

Positing that Section 1225(b)(2)(A) does not apply to him, Petitioner alleges that he "is currently being detained under the mandatory provisions of § 1226(c) due to his past criminal convictions." Pet. ¶ 33. At least one of Petitioner's prior convictions very well may fall within the enumerated offenses that require detention pursuant to Section 1226(c). Notably, Section 1226(c), with its attendant protections, provides for mandatory detention of "any alien" who has committed certain offenses, including lawful permanent residents and other noncitizens who, unlike Petitioner, have previously been admitted into the United States. 8 U.S.C. § 1226(c)(1); *see Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (discussing the application of Section 1226

10

to "a lawful permanent resident"); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 490 (S.D.N.Y. 2025) (noting that Section 1226 applies to, among others, "noncitizens who are lawfully admitted (e.g., on a visa of some sort), and who then remain present unlawfully").

Pertinent here, Section 1226(c)(1)(A) provides for detention of an alien who has committed "a crime involving moral turpitude."  8 U.S.C. § 1182(a)(2); *see* 8 U.S.C. § 1226(c)(1)(A) (referencing "offense covered in section 1182(a)(2)"). Petitioner has been convicted of "attempted assault in the third degree with intent to cause physical injury" in violation of New York Penal Law Sections 110 and 120.00(1).  Pet ¶ 30.  While there is no statutory definition of a "crime involving moral turpitude," the Board of Immigration Appeals has held that a completed "assault in the third degree under section 120.00(1) of the New York Penal Law . . . . is a conviction for a crime involving moral turpitude." *In Re Solon*, 24 I. & N. Dec. 239, 245 (BIA 2007).  Furthermore, the Second Circuit has explained that "where a conviction is for attempt," it considers "the substantive crime." *Jang v. Garland*, 42 F.4th 56, 61 (2d Cir. 2022).  As such, it appears that Section 1226(c), too, requires Petitioner's detention.

The government, however, attests that, in fact, Petitioner is being detained pending removal under Section 1225(b)(2)(A).  Carey Decl. ¶ 9 ("[Petitioner] is currently detained at the Orange County Jail pursuant to . . . 8 U.S.C. § 1225(b)(2)(A)").  Where two different statutes apply, it is not the role of this Court to insist that the Executive Branch enforce the law more favorable to the alien.  Rather, "[u]nder Article II, the Executive Branch possesses authority to decide how to prioritize and how aggressively to pursue legal actions against [aliens] who violate the law." *United States v. Texas*, 599 U.S. 670, 678–79 (2023) (internal quotation marks and citation omitted).  Moreover, if this Court were to rule that, where both statutes apply, an alien must be detained under Section 1226(c), and thus entitled to its attendant constitutional protection, would

be for the Court to direct the Executive Branch to treat aliens who commit crimes more favorably than those who do not. Put another way, if Petitioner had only entered the country illegally but had not been convicted of a crime involving moral turpitude (or any other enumerated Section 1226(c) crime), he would be subject to mandatory detention without a bond hearing under Section 1225(b)(2)(A). *See Chen*, No. 25-cv-8350 (MKV), 2025 WL 3484855, at *4. However, on this perverse logic, "*due to his past criminal convictions*," Petitioner must be "detained under the mandatory provisions of § 1226(c)" and, therefore, the Due Process Clause prohibits his unreasonably prolonged detention without a bond hearing. Pet. ¶ 33 (emphasis added). There is no basis in law or logic for such a ruling.

### B. The Constitution Does Not Require Petitioner's Release or a Bond Hearing.

Petitioner argues that he is entitled to a bond hearing whether he is detained under Section 1226(c) or Section 1225(b)(2)(A) because, he alleges, his detention has become unconstitutionally prolonged. *See* Reply at 1–7. However, Petitioner's authorities involve only detention under provisions of Section 1226. *See id.* at 2 (citing *Black*, 103 F.4th at 150–51 and *Velasco Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir. 2020)). As noted above, aliens who previously have been granted lawful admission into the United States may thereafter be detained under provisions of Section 1226. *See Jennings*, 583 U.S. at 289; *Black*, 103 F.4th at 137; *Lopez Benitez*, 795 F. Supp. 3d at 490. To be sure, as Petitioner points out, "[t]he Constitution establishes due process rights for 'all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.'" *Black*, 103 F.4th at 143 (quoting *Zadvydas v. Davis*, 533 U.S. at 693). However, as the Supreme Court has explained, an alien who is physically present in the United States may nevertheless be "treated, for constitutional purposes, as if stopped at the

12

border. And that ma[kes] all the difference." *Zadvydas*, 533 U.S. at 693.

Indeed, in this circumstance, "due process is whatever procedure has been 'authorized by Congress.'" *Poonjani*, 319 F. Supp. 3d at 648 (quoting *Mezei*, 345 U.S. at 221). This Court is bound by the Supreme Court's holding in *Mezei* that Congress defines the process due to an alien who has not been admitted into the United States. *See id.*; *see also Guzman v. Tippy*, 130 F.3d 64, 65–66 (2d Cir. 1997) ("Indefinite detention of excludable aliens does not violate due process"). This Court therefore cannot rule that the reasoning of *Black* and *Velasco Lopez* apply to Petitioner, and entitle him to a bond hearing, because those cases involve different statutory provisions. That is, Congress authorized different procedures for different categories of aliens. *See Chen*, No. 25-cv-9670 (JPC), 2026 WL 100761, at *1. As both the Supreme Court and the Second Circuit have explained, lower courts must follow a Supreme Court precedent that "has direct application in a case," even if "some other line of decisions" points in a different direction. *In re CBI Holding Co., Inc.*, 529 F.3d 432, 469 (2d Cir. 2008). Accordingly, the Court rejects Petitioner's argument that he is entitled to a bond hearing under *Black* (which dealt with detention under Section 1226(c)), even though he is detained pursuant to Section 1225(b)(2)(A).

In any event, even if the Court were to suppose, *arguendo*, that the Due Process Clause of the Fifth Amendment prohibits "unreasonably prolonged detention" of an alien detained under Section 1225(b)(2)(A), Petitioner has not demonstrated that the government has subjected him to unreasonably prolonged detention. Petitioner has been detained for more than seven months, since June 11, 2025. *See* Notice of Custody Determination; Carey Decl. ¶ 8. However, as the facts recited above make clear, *Petitioner* has repeatedly requested and received adjournments of his immigration case only to file this case arguing he has been held too long pending a resolution. *See* Carey Decl. ¶¶ 12–21. Indeed, after *eight* adjournments "at [Petitioner's] request . . . *ICE* opposed"

13

further delays.  Carey Decl. ¶ 19; *see id.* ¶ 12–19.

In prohibiting unreasonably prolonged detention pursuant to 1226(c), the Second Circuit "explicitly decline[d] to adopt a presumption of reasonableness or unreasonableness" based on the "duration of detention," but, nonetheless, stated that "immigration detention exceeding six months without a bond hearing raises serious due process concerns."  *Black*, 103 F.4th at 150 (internal quotation marks and citation omitted).  In assessing whether continued detention is justified, the Second Circuit directed courts to consider: (1) the alien's "private interest," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) the government's interest, including fiscal and administrative burdens.  *Id.* at 151 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  The Second Circuit found in *Black* that all three *Matthews* factors favored requiring a bond hearing "once the[] detention[] became unreasonably prolonged."  *Id.* at 155.

Here, the Court does not find that Petitioner's detention has been *unreasonably* prolonged. While detention exceeding six months ordinarily raises concerns, the record in this case makes absolutely clear that Petitioner has not been languishing without process or subjected to any *unreasonable* delays.  On the contrary, Petitioner was first brought before an Immigration Judge one week after his arrest, and the case was adjourned to allow time for Petitioner time to "consult with an attorney." Carey Decl. ¶ 11.  One week later, counsel appeared with Petitioner before an Immigration Judge, who granted a short adjournment, at Petitioner's request, for counsel to assess competency issues.  *Id.* ¶ 12.  As explained in more detail above, the Immigration Judge granted Petitioner's numerous requests for additional delays and conducted the *M-A-M-* Hearing to protect Petitioner's rights.  *See Id.* ¶¶ 13–21; *Matter of M-A-M-*, 25 I. & N. Dec. at 478 (requiring "safeguards" during removal proceedings "to protect the rights and privileges of [an] alien" with

competency issues); *Reid*, 132 F.4th at 115; *supra* at 3–5.

The Second Circuit "explicitly" held that the duration of detention alone does not establish that it is unreasonably prolonged. *Black*, 103 F.4th at 150. Here, undisputed facts in the record contradict Petitioner's allegation that his detention has been unreasonably prolonged. Thus, even if the Court were to accept Petitioner's incorrect argument that *Black* applies to Petitioner (which, as explained above, the Court rejects), the Court would not proceed to weigh the *Matthews* factors because those factors become relevant only "once" the challenged detention has become unreasonably prolonged. *Id.* at 155.[7]

Accordingly, the Court rejects Petitioner's argument that the Constitution requires a bond hearing, let alone his release.

**C. The Rehabilitation Act Does Not Require Petitioner's Release.**

In his petition for a writ of habeas corpus, Petitioner purports to assert a "second cause of action" alleging that Respondents have violated Section 504 of the Rehabilitation Act of 1974. Pet. at 20 (emphases omitted); *see id.* ¶¶ 64–72. The statute provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability,

---

[7] The factors identified in *Matthews*, a case about the termination without process of an American citizen's Social Security disability benefit payments, do not apply comfortably to the case of an alien who is detained under Section 1225(b)(2)(A) because he illegally entered the country, has never been lawfully admitted, and has been determined by immigration officials not to be entitled to be admitted. *See Mathews*, 424 U.S. at 323, 335. For example, in *Black*, the Second Circuit explained that the first *Matthews* factor was "the most significant liberty interest there is—the interest in being free from imprisonment." *Black*, 103 F.4th at 151 (quoting *Velasco Lopez*, 978 F.3d at 851). In many Section 1225(b)(2)(A) cases, that interest can be accomplished by the petitioner simply agreeing to "Voluntary Departure" from the United States. *Liang*, 25-cv-09322 (MKV), 2025 WL 3641512, at *2; *see Chen*, No. 25-cv-8350 (MKV), 2025 WL 3484855, at *2. Similarly, the second *Mathews* factor, "the risk of an erroneous deprivation" of the private interest at stake, does not fit comfortably in the case of an alien, like Petitioner here, and unlike the legal permanent residents in *Black*, who has *never* had any recognized right to be present in the United States. *Black*, 103 F.4th at 152; *see* Record at 3 (explaining that Petitioner has never had any legal status). The third *Matthews* factor, which weighs the cost of additional procedural hurdles, is likewise a different calculus where the government seeks to remove aliens who have never had a right to be here.

be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . . ." 29 U.S.C. § 794(a). Petitioner alleges that his "continued detention by Respondents without any consideration of his mental health disability or reasonable accommodation violates the Rehab Act." Pet. ¶ 71.

A writ of habeas corpus is not the appropriate remedy for Petitioner's civil discrimination claim. As the Supreme Court has explained, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). As this Court has explained, Petitioner's detention is not illegal.

Petitioner's "[d]etention during [his] removal proceedings is a constitutionally valid aspect of the deportation process." *Velasco Lopez*, 978 F.3d at 848; *see Demore v. Kim*, 538 U.S. 510, 523 (2003). Indeed, "Petitioner does not dispute here that he is rightfully subject to mandatory detention" under the INA. Reply at 6. "Instead, [he] asserts that his detention . . . has become unconstitutionally prolonged." *Id.* at 6–7. The Court has already concluded that Petitioner is properly detained pursuant to Section 1225(b)(2)(A) and rejected the assertion that his detention has become unconstitutionally prolonged.

Petitioner argues that his detention is illegal nevertheless because he has a disability and, Petitioner asserts, "[r]elease is the only reasonable accommodation to ensure that [he] can meaningfully access his immigration proceedings." Pet. ¶ 72. Petitioner, however, fails to cite a single case granting a petition for a writ of habeas corpus releasing an alien from immigration detention based solely on an alleged Rehabilitation Act violation. *See* Pet. ¶¶ 55–60, 64–72; Reply at 7–10. As far as the Court is aware, no such case exists.

16

There is some authority for the proposition that a federal habeas petitioner can seek release from custody based on a challenge to the conditions of his confinement. *See Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008). However, a demand for release does not automatically "transform[]" a civil rights complaint into a challenge to the legality of confinement. *Nelson v. Campbell*, 541 U.S. 637, 647 (2004). Rather, assuming without deciding that a Rehabilitation Act claim is, in some circumstances, cognizable in habeas, the petitioner would have to demonstrate that his disability requires his release. *See id.*

Petitioner here cannot demonstrate that his disability requires his release. Petitioner's assertions that he is being detained "without any consideration of his mental health disability" and that "[r]elease is the only reasonable accommodation to ensure that [he] can meaningfully access his immigration proceedings" are flatly contradicted by the record. Pet. ¶¶ 71, 72. As Petitioner himself points out, over the course of Petitioner's immigration case, the government has consented to approximately eight adjournments and the implementation of "*agreed upon*" safeguards to protect Petitioner's rights in connection with his removal proceedings. Pet. ¶ 24 (emphasis added); *see* Carey Decl. ¶¶ 11–20; *see also Matter of M-A-M-*, 25 I. & N. Dec. at 478.

Moreover, Petitioner fails to allege that he has been denied any benefit, or has otherwise been discriminated against, "*because of*" his disability, as required to prevail on a Rehabilitation Act claim. *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). The parties argue about whether the Rehabilitation Act provides a private right of action in this circumstance and, if so, whether the Act requires exhaustion of administrative remedies. *See* Opp. at 13; Reply at 9. The Court need not decide these questions because, in all events, Petitioner simply fails to allege any facts showing that "he was discriminated against *because of* his disability." *McElwee*, 700 F.3d at 646 (emphasis added).

17

Accordingly, the Court rejects Petitioner's argument that the Rehabilitation Act requires his release.  The Petition is DENIED in its entirety.

### III.    CONCLUSION

For the reasons set forth above, the Petition is DENIED.  The Clerk of Court respectfully is requested to close this case.

**SO ORDERED.**

**Date:   February 2, 2026**                                    **MARY KAY VYSKOCIL**
**New York, NY**                                                  **United States District Judge**

18